[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on May 29, 1995, a total of 13 years. I They separated in November of 1997. By complaint dated November 24, 1997, the Wife instituted this action claiming a dissolution of marriage, alimony, a fair division of property and debts, and other relief. The Husband appeared through counsel and was heard on all issues during the trial which proceeded over four days. It would appear that neither party is a stranger to wedding bliss or divorce misery, this being the fourth marriage and fourth divorce for both parties.
The Wife is in apparent good physical health, 48 years of CT Page 13179 age, and well educated with two post high school degrees. In 1996 she had a hysterectomy during which she developed complications requiring prolonged hospitalization and recovery. For a period of time she saw a therapist both with the Husband and separately for problems associated with the marriage.
The Husband is in apparent good health, 64 years of age, and well educated including a law degree.
At the of the marriage, the Wife owned a residence which she sold and after payment of liabilities, netted approximately $26,000. The husband owned a residence which today has a negative equity. In addition, he had a gun collection, two annuities from legal cases he had handled and contributions of $8,758.91 with the State of Connecticut to which he was entitled. He also had miscellaneous liabilities including a $16,000 bank loan. Both parties had acquired an interest in retirement assets, although neither one was precise regarding the value of those assets at the time of the marriage.
No children were born to the marriage, however, the Husband had two children and the Wife one from prior marriages. While the Husband's adult children were not a factor, the Wife's son, age 18 and in jail on the date of marriage, caused considerable friction. He was not allowed to visit the marital residence at the Husband's insistence.
At the time of the marriage in 1985, the Husband had been a Judge of the Superior Court for 3 1/2 years. Prior to that he was in private practice for many years. In February of 1998, he was not reappointed to a new term on the bench and retired after 16 years and 3 months of service. A Special Act of the General Assembly was needed to enable him to commence receiving his judicial pension of $65,616.72 per year immediately rather than at age 65. As a result of the turmoil, he did not have any employment income until he received accumulated pension benefits in July. At the present time he is unemployed with guarded prospects given his age and circumstances.
The Wife has been employed by Yale University for many years having risen from a clerk to a managerial position as a certified professional coder in the health management field. Her annual salary is $40,408.68 with a variety of benefits.
It would serve no useful purpose to chronicle the causes for CT Page 13180 the marriage breakdown. There were problems for many years and the parties gradually grew apart. Despite being intelligent, educated and articulate individuals, they obviously didn't learn much from their multiple marriage experience. The Wife claimed the Husband had a temper, couldn't communicate, didn't like her family, wouldn't permit visitors, objected to her housekeeping skills, wouldn't let her park her car in the garage, screamed at her at tax time, was a "night person", stopped socializing together, made unreasonable sexual demands, and other similar allegations. The Husband, while having fewer complaints in number, claimed the principle cause of the breakdown was the Wife's acquiring the sexually transmitted disease chlamydia, her "shopaholic" propensities, arguments over her son, poor housekeeping habits, the total absence of a sexual relationship for many years, and other similar allegations. Recriminations made it difficult to sort out who was primarily responsible but it is abundantly clear that the marriage is irreconcilable.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
The marriage is dissolved on the grounds of an irretrievable breakdown.
Alimony
No periodic alimony is awarded to either party.
Real Estate
The Husband shall retain title to the residence located at 361 Sherman Avenue, New Haven, Conn.
The jointly owned real estate lots at 144 and 146 Blue Hills Road, North Haven, Connecticut shall be immediately listed for sale for $105,000 and $95,000 respectively, and sold to the buyer with the first reasonable offer within 5% of the listing price. Net proceeds, defined as gross selling price less real estate CT Page 13181 commission, customary closing costs, and a $70,000 payment to the Husband, shall be divided equally. For example, assume the property sells for $190,000, real estate commission and closing costs are $10,000, and $70,000 is paid to the Husband, there would be a net of $110,000 ($55,000 each) to be divided between the parties.
The Husband shall have the option of purchasing the Wife's interest in said lots for $55,000 provided he gives the Wife 15 days notice from date of his intention to do so and completes the purchase within 60 days from date.
In the event the lots are not sold within 180 days from date, upon motion, the parties are to return to court for further instructions on the reduction of the listing price. The court will retain jurisdiction until the property is sold.
Retirement Benefits
The Husband shall assign to the Wife, by way of a Qualified Domestic Relations Order (QDRO), twenty 20% of his pension benefits from the Judicial Department of the State of Connecticut (current semi-monthly benefit $2,734.05 x 20% = $546.81). In the event the entire pension benefit from the State of Connecticut is included on the Husband's W-2 form and taxable to him, the assigned payment is to be considered alimony for tax purposes, and shall be includable by the Wife and deductible by the Husband on their respective state and federal tax returns. The 20% award includes future cost of living adjustments, is not subject to modification, and is terminable upon the death of either party. The court shall retain jurisdiction until the QDRO is approved by the plan administrator.
Each party shall be entitled to retain, as his or her sole property, the balance of retirement accounts as shown on their respective financial affidavits.
Bank Accounts, Stocks, Bonds, and Mutual Funds
All of the stocks, bonds and mutual funds shown on the Wife's financial affidavit (§ 4E.) are awarded the Wife.
All of the savings bonds shown on the Husband's financial affidavit are awarded to the Husband. CT Page 13182
Each party shall retain their own bank accounts as shown on their respective financial affidavits. The balance in the joint checking account is awarded to the Wife.
Personal Property
The Husband shall transfer title to the 1977 BMW automobile to the Wife. All other automobiles shall remain the property of the Husband.
All items of personal property listed on the attachment to the Wife's proposed orders, excluding the disputed computer desk which the Husband shall retain, are awarded to the Wife. She may retrieve said items within 14 days from date, arrangements to be made through counsel. All other items shall remain the property of the party in control of same.
Liabilities
Each party shall be solely responsible for the debts listed on their respective financial affidavits.
Counsel Fees
Each party shall be responsible for their own counsel fees except that the Husband shall immediately pay $500, plus statutory interest, as ordered by the court on August 13, 1998.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein.
CUTSUMPAS, J.